```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
HOUSTON CASUALTY COMPANY,                :
                                         :
                    Plaintiff,           :
                                         :            MEMORANDUM AND
         -against-                       :            ORDER
                                         :
ALLIED WORLD INSURANCE COMPANY           :            22-CV-3168 (PK)
(U.S.), INC.,                            :
                                         :
                    Defendant.           :
                                         :
---------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

Before the Court is Houston Casualty Company's ("Plaintiff" or "HCC") Motion for Partial Summary Judgment ("Motion," Dkt. 41), seeking a declaration that Allied World Insurance Company (U.S.), Inc. ("Defendant" or "Allied World") has a duty to defend in an underlying action, as well as reimbursement of defense costs that HCC has incurred. For the reasons stated below, the Motion is denied.

## BACKGROUND

Except as otherwise noted, the following facts are drawn from the Rule 56.1 statements of undisputed facts submitted by the parties. (Plaintiff's Rule 56.1 Statement, Dkt. 43; Defendant's Rule 56.1 Counterstatement ("Def. 56.1"), Dkt. 47.)

### I. The Underlying Action

325 Lafayette Associates LLC ("Lafayette") is the owner of property located at 325 Lafayette Avenue in Brooklyn, New York (the "Property"). On February 3, 2016, Lafayette engaged Britt Realty LLC ("Britt") to act as General Contractor for a construction project at the property (the "Project"). (Def. 56.1 ¶ 26; *see* Construction Contract, Dkt. 42-6.)

1

In a subcontract with Britt dated April 7, 2016, "Supreme Flooring Inc." agreed to perform certain work at the Project, including tile installation, and agreed to defend and indemnify Lafayette and Britt for any claim arising out of or resulting from the Supreme entity's work, excluding only liability created by the sole and exclusive negligence of the indemnified parties ("Subcontract 1"). (*Id.* ¶¶ 27, 37; *see* Subcontract 1, Dkt. 42-7.)

In a subcontract with Britt dated April 26, 2017, "Supreme Flooring" agreed to perform the same work and indemnify the same parties ("Subcontract 2"). (*Id.* ¶ 29; *see* Subcontract 2, Dkt. 42-8.) "Supreme Flooring" is the trade name for Supreme Floor Coverings LLC and Supreme Wood Floors, Inc. (*See id.* ¶¶ 45, 47-50.)

On June 23, 2018, Edwin Rubio Garzon ("Garzon"), a painter employed by non-party MEC General Construction Corp., was walking on stilts to sand a ceiling at the Project, when one of the stilts got stuck on paper protecting the floor, and he fell and was injured. (*Id.* ¶¶ 8-9, 20-25.) He brought suit in New York Supreme Court, Kings County, *Edwin A. Rubio Garzon v. 325 Lafayette Associates LLC, et al.*, No. 521569/2018 (the "Underlying Action"), raising negligence and New York Labor Law claims against, *inter alia*, Lafayette and Britt. (*Id.* ¶¶ 11-12.) Plaintiff is currently defending Lafayette and Britt in the Underlying Action and continues to incur defense costs. (*Id.* ¶ 76.)

On March 31, 2021, Lafayette and Britt filed a Third-Party Complaint in the Underlying Action against "Supreme Flooring Inc.," later amending it to name "Supreme Wood Floors, Inc. d/b/a Supreme Flooring" as defendant. (*Id.* ¶¶ 13-14.) The Third-Party Complaint alleges that any injuries suffered by Garzon were caused by the negligent acts or omissions of Supreme Flooring, and that Lafayette and Britt are entitled to indemnification from Supreme Flooring. (*Id.* ¶ 15.)

On April 9, 2021, Garzon filed a separate action against Supreme Flooring (the "Related Underlying Action"). (*Id.* ¶ 16.)

## II. The Insurance Policies

### A. *HCC Policy*

Plaintiff issued an insurance policy to Slate Property Group for the period from May 5, 2016 to May 5, 2021 (the "HCC Policy"). (*Id.* ¶ 58; *see* HCC Policy, Dkt. 42-15.) Lafayette and Britt were named insureds under this policy. (*Id.* ¶¶ 59-60.) The HCC Policy had limits of $2 million for each covered event and $4 million aggregate, subject to a deductible of $25,000 per covered event. (*Id.* ¶ 61.) The HCC Policy limited coverage to two projects: the Project and a separate project at 420 East 54th Street, New York, NY. (*Id.* ¶¶ 62-63.)

### B. *Allied World Policy*

Defendant issued an insurance policy for the period May 4, 2018 to May 4, 2019 to Supreme Floor Coverings LLC, with Supreme Wood Floors, Inc. as a named insured (the "Allied World Policy"). (*Id.* ¶¶ 51-52; *see* Allied World Policy, Dkt. 42-14.) The Allied World Policy had limits of $1 million for each covered event and $2 million aggregate, subject to a deductible of $5,000 per covered event. (*Id.* ¶ 53.) The Allied World Policy contains an endorsement entitled "Exclusion – Designated Project Policy" (the "Exclusion") which excludes coverage for "all work and projects insured separately under a designated project policy." (*Id.* ¶ 57; Allied World Policy at 33 (ECF pagination).) The Policy states that the Exclusion applies "regardless of whether such operations are conducted by you [the insured] or on your behalf or whether the operations are conducted for yourself or for others." (*Id.*)

The parties do not dispute that the Allied World Policy acts as primary and non-contributory coverage, while the HCC Policy applies as excess coverage. (*See, e.g.*, Plaintiff's Reply Memorandum ("Reply"), Dkt. 49 at 9.)

### III.  Procedural History

By letter dated November 4, 2021, Plaintiff tendered the defense and indemnification of Lafayette and Britt in the Underlying Action to Supreme Flooring and Defendant; by letter dated December 30, 2021, Defendant rejected the tender.[1]  (Def. 56.1 ¶¶ 66-67.)   By letter dated January 20, 2022, Plaintiff re-tendered the defense of Lafayette and Britt to Defendant.  By letter dated October 5, 2022, Defendant denied coverage, citing the Exclusion in the Allied World Policy. (*Id.* ¶¶ 70-74.)

Plaintiff commenced this action by filing the Complaint on May 31, 2022.  (Dkt. 1.)  The parties consented to magistrate judge jurisdiction for all proceedings.  (Dkt. 16.)

Plaintiff has moved for partial summary judgment, seeking declaratory judgment that Defendant has the duty to defend Lafayette and Britt in the Underlying Action, that Plaintiff may withdraw from Lafayette and Britt's defense, and that Defendant must reimburse Plaintiff for costs incurred in defending Lafayette and Britt.[2]  (Motion; *see* Memorandum in Support of Motion ("Mem."), Dkt. 44.)  Defendant has opposed.  (Mem. in Opp. ("Opp.,") Dkt. 48.)  Plaintiff has filed a reply.  (Reply.)

## DISCUSSION

### I.  Legal Standards

#### A. *Summary Judgment*

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Rule 56(a) states:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court

---

[1] Defendant states that the letter was addressed to "Christopher Gibbons of Bartlett LLC," not Defendant, and that "HCC has not proffered any evidence of when Allied World first received notice"; however, Defendant acknowledges that it eventually received the letter.  (*Id.* ¶¶ 66-67.)

[2] Plaintiff first moved for partial summary judgment on November 11, 2022 (Dkt. 19), but when Plaintiff's motion to amend the Complaint was granted, that motion became moot.  (July 25, 2023 Order.)  Plaintiff then declined to amend the Complaint.  (Aug. 3, 2023 Order.)

4

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. Declaratory Relief

A declaratory judgment is available in federal court "to resolve a 'real question of conflicting legal interests.'" *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (citations omitted). The Declaratory Judgment Act requires that there be a "case of actual controversy" in order for a court to declare legal rights and other legal relations. 28 U.S.C. § 2201(a). "'A justiciable controversy' may not be 'hypothetical or abstract' in nature, but rather must be 'a real and substantial controversy . . . .'" *FSP, Inc. v. Societe Generale*, No. 02-CV-4786 (GBD), 2003 WL 124515, at *4-5 (S.D.N.Y. Jan. 14, 2003), *aff'd and remanded*, 350 F.3d 27 (2d Cir. 2003), *adhered to on reconsideration*, 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005).

A request for declaratory relief that seeks determination of insurance coverage for an ongoing underlying lawsuit is not premature and is appropriate for declaratory relief. *See, e.g.*, *U.S. Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*, No. 19-CV-7884 (MKV), 2020 WL 2489078, at *2 (S.D.N.Y. May 14, 2020) ("courts in this circuit commonly find insurance coverage disputes ripe for adjudication before

5

the insured has incurred any liability") (citing *Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 511–12 (S.D.N.Y. 2018)).

### C. Insurance Contract Interpretation Principles

"In determining a dispute over insurance coverage, [New York courts] first look to the language of the policy" and "construe the policy in a way that 'affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect.'" *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 693 (N.Y. 2002). "In New York, the terms of an insurance policy have long been accorded 'a natural and reasonable meaning' . . . corresponding to 'the reasonable expectation and purpose of the ordinary business[person].'" *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1206–07 (2d Cir. 1989).

"Where the provisions of the policy 'are clear and unambiguous, they must be given their plain and ordinary meaning . . . .'" *U.S. Fid. & Guar. Co. v. Annunziata*, 492 N.E.2d 1206, 1207 (N.Y. 1986). "It is well settled that '[a] contract is unambiguous if the language it uses has "a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion."' *White v. Cont'l Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007). "Moreover, an ambiguity does not arise from an undefined term in a policy merely because the parties dispute the meaning of that term." *Hansard v. Fed. Ins. Co.*, 46 N.Y.S.3d 163, 167 (N.Y. App. Div. 2017) (citing *Mount Vernon Fire Ins. Co. v. Creative Hous.*, 668 N.E.2d 404, 406 (N.Y. 1996)). "If the terms of a policy are ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer." *White*, 878 N.E.2d at 1021.

### D. Duty to Defend

An insurer's duty to defend its insured is "exceedingly broad" and is triggered "whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." *High Point Design, LLC v.*

6

*LM Ins. Corp.*, 911 F.3d 89, 94–95 (2d Cir. 2018). "[T]here is no relevant difference between the allegations that trigger an insurer's duty to defend and the allegations that trigger an insurer's obligation to pay defense expenses." *Lowy v. Travelers Prop. & Cas. Co.*, No. 99-CV-2727 (MBM), 2000 WL 526702, at *2 n.1 (S.D.N.Y. May 2, 2000).

An insurer "may deny its insured a defense 'only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy.'" *High Point Design*, 911 F.3d at 94-95 (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985)).

## II. Whether Allied World Has a Duty to Defend Lafayette and Britt

Plaintiff argues that Defendant has a duty to defend Lafayette and Britt as additional insureds under the Allied World Policy. Defendant contends, however, that there is a genuine issue of material fact as to whether "Supreme Flooring" or "Supreme Flooring Inc.," was the flooring subcontractor for the Project, and that the Exclusion excludes coverage for all work and projects insured separately under a designated project policy.

### A. *Whether Supreme Flooring Was the Subcontractor*

Defendant argues that a genuine issue of material fact exists as to whether its insured Supreme Wood Floors Inc. or Supreme Floor Coverings LLC (both of which used the trade name Supreme Flooring) was the flooring subcontractor for the Project, or whether Supreme Flooring Inc. was. Defendant notes that "Supreme Flooring Inc." was a separate entity incorporated by the same principals as those of Supreme Flooring, and that neither Supreme Wood Floors Inc. nor Supreme Floor Coverings LLC registered "Supreme Flooring Inc." as an alternative trade name. (Opp. at 11.) Because the Allied World Policy provides coverage to Supreme Wood Floors Inc. and Supreme Floor Coverings LLC, it would only apply if Subcontract 2 (between Britt and Supreme Flooring) was in

7

effect at the time of Mr. Garzon's injury. If, instead, Subcontract 1 between Britt and "Supreme Flooring Inc." remained in effect, the policy might not apply. Defendant contends that the question of which subcontract was in effect is a dispute of material fact because the answer would determine whether the Allied World Policy provides coverage to Lafayette and Britt through their subcontractor relationship. (Opp. at 11.)

In response, Plaintiff states that the subcontracts are "virtually identical" and that it "appears" that Subcontract 2 with "Supreme Flooring" superseded Subcontract 1 with "Supreme Flooring Inc." (Reply at 2.) Plaintiff also notes that an entity called "Supreme Flooring Inc." filed for dissolution in 2011, more than four years before Subcontract 1 was signed, making it "appear" that naming "Supreme Flooring Inc." in Subcontract 1 was a mistake. (*Id.* at 2-3.) Plaintiff also argues that even if Subcontract 1 were in effect, the Allied World Policy would still apply because Supreme Wood Floors Inc. has admitted that it did business as "Supreme Flooring Inc." on or about April 7, 2016. (Reply at 3 n.3; *see* Def. 56.1 ¶ 48.)

Although an insurer has a duty to defend if there is a reasonable possibility of coverage, *see, e.g.*, *Charter Oak Fire Ins. Co. v. Hanover Ins. Co.*, 716 F. Supp. 3d 39, 43 (E.D.N.Y. 2024), as the party moving for summary judgment, Plaintiff must show that there is no dispute as to any material fact and that it is entitled to summary judgment as a matter of law. Plaintiff's arguments have logical appeal, but they do not foreclose the possibility that Subcontract 1 remained in effect, even after Subcontract 2 was signed. Subcontract 1 does not contain a termination date, and Subcontract 2 does not state that it supersedes Subcontract 1. Plaintiff presents no evidence that conclusively shows that Subcontract 1 no longer applied after Subcontract 2 took effect.

Moreover, notwithstanding that Supreme Wood Floors Inc. did business as "Supreme Flooring Inc." on or about the date that Subcontract 1 was created, it remains an open question whether Supreme Wood Floors Inc. was the entity that signed Subcontract 1 using the name "Supreme

Flooring Inc." No facts have been presented to explain which entity entered into Subcontract 1 with Britt in 2016, given that the entity Supreme Flooring Inc. had already filed for dissolution in 2011. Crucially, no facts establish that Supreme Floor Coverings LLC or Supreme Wood Floors Inc., using the name "Supreme Flooring Inc.," entered into Subcontract 1.

Because the question of whether Supreme Wood Floors Inc., Supreme Floor Coverings LLC, or some other entity called Supreme Flooring Inc. was Britt's subcontractor at the time of the underlying incident remains disputed, Plaintiff fails to meet its burden to show that there is no dispute as to any material fact.

Accordingly, Plaintiff's motion for summary judgment must be denied.

### B. *Whether the Allied World Policy's Exclusion Creates No Duty to Defend*

Plaintiff's request for a declaration that Defendant has a duty to defend Lafayette and Britt in the Underlying Action would also require the Court to find, *inter alia*, that the Allied World Policy's Exclusion does not apply to exclude coverage of the Project.

Plaintiff acknowledges that the Exclusion operates to exclude coverage for any project that is covered by another insurance policy that specifically designates the project. However, Plaintiff argues that the Exclusion does not exclude coverage for the Project because the HCC Policy designates more than one project and because the Exclusion applies only to policies that cover Supreme Flooring as an insured.

Plaintiff contends that since the HCC Policy covers two sites, the Exclusion does not apply, as otherwise the "Designated Project Policy Exclusion" would be called the "Designated Projects" or "Designated Project(s)" Policy Exclusion; Plaintiff also notes that if there is an ambiguity in the policy's language, it must be construed against Defendant. (Reply at 8.)

Notwithstanding the use of the singular rather than the plural in the title of the Designated Project Policy Exclusion, the description of the "Designated Ongoing Operation(s)" makes it clear

9

that a covered designated project policy can encompass more than one project, as it refers to "all work and *projects* insured separately under a designated project policy" (emphasis added). Thus, because the HCC Policy specifically designates the Project site as one of two specific sites that the policy applies to, it is a designated project policy covered by the Exclusion.

Plaintiff also argues that the Exclusion applies only to policies that cover Supreme Flooring's work at the Project and that Supreme Flooring is not a named insured, insured, or additional insured under the HCC Policy. (Reply at 7.) In support, Plaintiff contends that because the Allied World Policy states that the Exclusion applies "regardless of whether such operations are conducted by *you* [Supreme Flooring] or on *your* behalf or whether the operations are conducted for *yourself* or for others" (Mem. at 10 (emphasis added by Plaintiff)), the use of "you" and "your," referring to Supreme Flooring, suggests that the Exclusion is only triggered when a separate designated project policy covers the ongoing operations of Supreme Flooring. (*See id.*)

Defendant responds that the plain language of the Exclusion indicates that it applies to *all* designated project policies and is not just limited to policies covering Supreme Flooring as an insured. (Opp. at 13.)

The Court agrees with Defendant. The Allied World Policy excludes coverage for a bodily injury arising out of "all work and projects insured separately under a designated project policy" and places no limitation based on who is insured under that policy. (Allied World Policy at 33 (ECF pagination).) Moreover, the language cited by Plaintiff as suggesting that the Exclusion applies *only* to other polices that cover Supreme Flooring suggests otherwise. The provision notifies Supreme Flooring that coverage under the Allied World Policy could be excluded under various circumstances, including when the operations covered by a separate project policy are conducted by Supreme Flooring *or* by others on Supreme Flooring's behalf.

Accordingly, I decline to find that the Exclusion does not apply as a matter of law.

10

**CONCLUSION**

Because there is a genuine dispute as to who Britt's subcontractor was at the time of the injury in the Underlying Action, and the Court declines to find that the Allied World Policy Exclusion does not apply as a matter of law, Plaintiff's Motion for Partial Summary Judgment is denied.[3]

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
         March 27, 2025

---

[3] Because the Court does not find, at this point, that Defendant has a duty to defend Lafayette and Britt in the Underlying Action, Plaintiff's request for reimbursement of costs incurred by Plaintiff to defend Lafayette and Britt in the Underlying Action is also denied without prejudice.

11